## HILSENBECK *v.* GUHRING.

*(Supreme Court, General Term, First Department. December 29, 1890.)*

1. NEGLIGENCE—DANGEROUS PREMISES—EVIDENCE.
    The owner of premises, occupying the first floor himself, and renting the rooms above to tenants, allowed a dark hall-way, in which there were three adjacent doors, —one opening into his saloon; one opening upon a flight of stairs; and the other, next and close to the last, opening into a water-closet used by all the occupants of the premises,—to remain unlighted. He allowed the door opening upon the stairs to remain unlocked on one occasion, and a visitor of one of his tenants, in resorting to the water-closet, opened the stair-door by mistake for that of the latter, and fell down the stairs, thereby sustaining a serious injury. *Held,* that it was a question for the jury whether the owner was guilty of negligence.
2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
    In an action for such injury, whether the plaintiff was guilty of contributory negligence is a question of fact for the jury, and should not be excluded from their consideration.

Appeal from circuit court, New York county.

Action by Leonhard Hilsenbeck against John M. Guhring. There was judgment for defendant, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Alfred Steckler*, for appellant.    *William J. Gaynor*, for respondent.

DANIELS, J. The action was brought against the defendant as the owner and possessor of premises situated in the city of Brooklyn, and known as "No. 206 Calyer Street," to recover damages for an injury sustained by the plaintiff on or about the 6th day of January, 1889. The building was in part occupied by the defendant as a restaurant and dwelling, and by other persons as tenants, to whom the defendant leased portions of it. On the upper floor the son-in-law of the plaintiff resided, whose family was visited by him on

the day of the accident.  This occurred about 5 o'clock in the afternoon.
The plaintiff descended from the apartments occupied by his son-in-law to the
first floor of the building, to make use of the water-closet, which was there
maintained for the convenience of the occupants of the building.   The stairs
terminated in a hall in which the water-closet was located.   The hall at the
time was dark, receiving no other light than came from a window over the
street door; and, as the day was dark, this was insufficient to clear the dark-
ness from the hall.   There were three doors in the hall,—one leading into the
saloon, the next to the basement, and the third to the water-closet.   The evi-
dence of the plaintiff is that he found the second door slightly open, and, sup-
posing that to be the door of the water-closet, passed through it, and fell
down the stairs into the basement below, and thereby sustained a fracture of
his leg.   A gas-jet was maintained in the hall, but it was not at the time
lighted.   And the evidence tended to establish the fact that the basement was
used as a depository for wood and coal and other things, for the use of the
occupants of the building; that the defendant had in the saloon a key to the
door through which the plaintiff passed when he fell into the basement, and
that this door was at times locked, and at others left unlocked.   But the de-
fendant, and the person in his employment in the saloon, were the individuals
who appear to have had the control and management of the door in the way
of locking and unlocking it.   Prior to the occurrence of this accident, the
witness Scheffler, who was the plaintiff's son-in-law, testified that he went to
the water-closet at one time in the night, and missed the door and caught the
other door; and that he afterwards informed the defendant that this door was
open, and that he had tumbled himself on the top of an ash barrel that was
standing on the platform; and that the defendant replied that his bar-tender
had forgot to lock the door.   This was about four or five weeks prior to the
accident.   From the fact that the plaintiff was visiting the family of his son-
in-law it is to be presumed that he was lawfully in the building on this occa-
sion, and that he had the right to use the water-closet, as that was intended
by him when he descended from the apartments he had been visiting.   And
from the position in which the water-closet was located, and its devotion to
the uses and convenience of the occupants of the building, it is also equally
to be presumed that the hall including this part of the building was in the
possession and control of the defendant, as distinguished from the tenants.
It was accordingly his duty to observe care and attention in managing this
part of the building, so as to avoid the needless exposure of the tenants them-
selves, or of their lawful visitors, to the risk of accidents by passing through
the unsecured door to the basement, instead of into the water-closet, as that
might at the time be designed.   And the observance of that care when the
hall was dark was no more than a reasonable or proper precaution on his part.
This would no doubt have been satisfied either by the locking of the door lead-
ing to the basement, or the lighting of the gas-jet in the hall, which would have
enabled persons to discover the location of the water-closet, and avoid the
mistake of passing, instead of that, through the door into the basement.   The
case was one which, under the evidence, raised a question of fact whether the
defendant had observed that degree of care which the circumstances exhibited
the propriety of observing for the protection or security of persons lawfully
making use of this part of his building.   In this respect the case does not, in
principle, differ from the rule which was applied for the disposition of *Camp*
v. *Wood*, 76 N. Y. 92.   There, an attendant at a ball passed in the night-time
through a door opening upon a wooden platform built out from the second
floor of the building.   This was unguarded by any railing or otherwise, and
the plaintiff, supposing himself to be upon the street side, fell, and was in-
jured; and it was held by the court that there was that degree of omission to
observe care on the part of the defendant as to justify the submission of the
case to the jury.   In *Tousey* v. *Roberts*, 114 N. Y. 312, 21 N. E. Rep. 399,

an elevator door had been left open, through which the plaintiff passed, supposing the elevator at the time to be there; but it was not there, and he fell, and received a serious injury; and the court concluded this to be a case for the jury. And the same principle was applied to *McRickard* v. *Flint,* 114 N. Y. 222, 229, 21 N. E. Rep. 153, where, in the day-time, the party stepped into an elevator shaft through a partly opened door. The cases of *Harris* v. *Perry,* 89 N. Y. 308; *Edwards* v. *Railroad Co.,* 98 N. Y. 245; and *Wolf* v. *Kilpatrick,* 101 N. Y. 146, 4 N. E. Rep. 188, materially differ from those just referred to, as well as from the present case, in their controlling facts; and no intimation is contained in either which will relieve the defendant from the obligation to observe that degree of care in the management of this part of his building which has already been mentioned. It is true, as was said in *Wasson* v. *Pettit,* (N. Y.) 22 N. E. Rep. 566, that the defendant can only be held liable on the ground of negligence, establishing the fact that he was guilty of some act of omission from which fault on his part could be reasonably inferred. But evidence presented a case in which the jury might deduce this inference, and it was for them to consider and determine whether that conclusion should be adopted under the evidence given upon the trial. Whether the plaintiff himself was negligent in passing through the hall and into the way leading to the basement was, also, under the authorities to which reference has been made, a question for the jury to consider and determine; and the case of *Gaffney* v. *Brown,* 150 Mass. 479, 23 N. E. Rep. 233, does not justify the exclusion of that question from the jury. There the plaintiff, in the day-time, passed into an open door leading from the dining-hall into a basement, and could easily, by the use of her powers of observation, have detected her mistake in opening this door for the door leading from the dining-room. The case of *Wilkinson* v. *Fairrie,* 1 Hurl. & C. 631, is very directly in point. There the plaintiff was passing through a dark hall, and encountered a personal injury, but the court held him unable to maintain an action for damages for the want of care on his part; and, if that were the only authority to be considered and followed, then the dismissal of the plaintiff's complaint would necessarily be justified. But the principle applied in *Camp* v. *Wood, Tousey* v. *Roberts,* and *McRickard* v. *Flint, supra,* is by no means so harsh or severe upon the person lawfully using the premises of another and sustaining an injury in this manner. Under the authority of these cases it was for the jury to consider and decide whether the plaintiff was so far chargeable with negligence in endeavoring to reach the closet at the time through the darkened hall-way as to prevent him from maintaining an action for the recovery of damages. Upon both branches of the case it was one for the jury, and the judgment, as well as the order, should be reversed, and a new trial directed, with costs to the plaintiff to abide the event of the action. All concur.